Ms. Ellsworth for the government and Mr. Burstein for the appellate. I believe Mr. Burstein you're first. Please proceed. Thank you, your honor. Thank you, your honor. I've just noticed that my internet connection has become unstable. So if I drop out, I apologize. I will switch to a different network. It was obviously fine during testing, but now it's not. OK. Thank you very much, your honors. This appeal is not about the guilt or innocence of Mr. Soto-Melchor. And it's not about a continuance, which he didn't request. This appeal is about, and to paraphrase the Supreme Court, the right at stake here is the right to counsel of choice. And that right was violated because the deprivation of counsel was erroneous. Now, here, your honors, as a factual matter, all the parties agree that Mr. Soto-Melchor, the interest of justice would be served if Mr. Soto-Melchor was able to obtain the counsel that he wanted, that is to retain counsel. Mr. Soto-Melchor, his attorney, even the government... Counselor, can you hear me? Can you hear me? Yes, I can. OK. I understand the facts slightly differently. He had Judge O'Neill in a case where there had been two previous continuances. Roughly three to four weeks prior to the scheduled trial date, for the first time, your client said he wanted to get a new lawyer. He said he wanted to retain a lawyer, and the judge immediately focused on two things. First of all, the fact that it would delay the trial. Everybody seemed to agree that if you were going to trial, it would require a continuance. The court focused on that, talked about that. There were two other ones, of course, one week before trial, one just on the day of trial. But in each instance, it seems to me that the court's primary concern, other than good cause for wanting a change of counsel, was the fact that they were in the Eastern District of California, which was absolutely slammed with cases. They didn't have enough judges, and this particular judge was leaving the bench. So when you say that the only issue was whether there was a right to counsel, I'm having trouble with that. Indeed, I have difficulty distinguishing this case from the Wynn case, where both a request for continuance and a request for new counsel were shown. Why is this case different from Wynn? Right, your honor, and that's a fair point. First of all, Wynn, of course, was a reversal, so we were happy to follow in Wynn's stead in that sense as well. But this case is different from Wynn because, respectfully, that recitation of the facts is not entirely accurate, your honor. Wynn, the judge made clear from the outset, he wasn't granting a continuance. He had traveled halfway around the world. He wasn't granting any delay in the trial. That was the primary basis. We have the exact opposite here. This judge, your honor, said, I would be glad to give you more time if you could show me good cause. Well, wait a minute. Wait a minute. That's what he said in the second request. But the first request, it was, as I understand it, what the judge said was there's no way that any new counsel can get ready for trial in four weeks. The defense counsel agreed with that. And only then did they get to what was the reason for wanting a change. Isn't that correct? No, your honor. That's not correct. The judge. Okay. So what the judge said was you were suggesting two things. One, you were suggesting getting your own attorney. And that is a different analysis for the court than asking to first discharge the attorney that you have. And so we have to take up the second issue first. And that is whether or not there is good cause to have the attorney that you have not serve as your attorney anymore. That was wrong in and of itself. So I'm following you. I think you skipped over something, though. On page 20 of the excerpt of the record, the judge gave a reason why he took up that second issue first. What was the reason he gave for jumping directly to the good cause? I'll read it to you if you want me to. I'll read it to you to save time. It says, and what I'm specifically telling you here is I'm going to tell you there's no attorney that's going to come to this case of this nature three. It was actually four. But I don't think that makes a difference. Three weeks before trial and say, no problem. I'm happy to take the case. I'm going to repair it. And I think Judge Smith is right. I've read this record. He said this multiple times. And the defense counsel agreed with them. The defense counsel went further and said that the counsel that have contacted me, the outside counsel, have actually told me their biggest concern is that they would need a continuance. It says that in the record. So the reason he jumped to that second issue is precisely, from the record here, is precisely because the judge was convinced that it would actually delay the trial. So let me ask you this. It seems like you kind of create a catch-22 for the district court judge. You say, well, the judge has to essentially say I'm not going to grant a continuance. But here what the judge said is I'm not going to grant a continuance because it will delay the trial. I'm not going to grant you changing attorney because it will delay the trial unless you can show me good cause. You show me good cause and I will grant you the continuance even though it will mess my schedule up. Isn't that what the judge is supposed to do? Well, the first answer is no. That's not what the judge is supposed to do in this context. Because with the right to counsel of choice, it's a different analysis. So what this court's case loss, and there's a second answer to that. But what this court's case law says about the right to counsel of choice is unless the substitution would cause significant delay, would cause significant delay, or that a contrary result is compelled, that's Rivera, Corona, and Brown. So the judge is not supposed to do that. Well, first of all, this was four weeks. It was a one afternoon trial that lasted a total of 71 transfer pages. It was a slow plea to suggest somebody couldn't be ready in a month I don't think is accurate, nor did the judge make that finding. But let's take the premise. So that's actually really important, I think, because if I think your case kind of turns on whether or not, I mean, if it wasn't going to delay trial or if the judge was just wrong about that, then I think you have a case. But when I read this record, it says over and over again, the judge comes back to the fact that this is going to delay trial. And when he talks to defense counsel, defense counsel says it's going to delay trial. They talk about whether that the government won't agree to delay trial. I mean, it's in there multiple times. And so that kind of I think your case kind of turns on that, that the judge was wrong about that. And following up on my colleague's comment in the United States Supreme Court case of Gonzalez-Lopez, the Supreme Court, and I'm reading this, recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar. So in this case, I'm struggling with the same thing that Judge Van Dyke is, that here you've got this. Everybody knows you practice over there, the Eastern District of California to this day is woefully short of judges. And Judge O'Neill was going to be retiring. He knew that that was always there. Everybody talked about these issues. And to me, it's difficult to switch this and say it was primarily about the right to counsel, particularly when you take the Gonzalez-Lopez case from the Supreme Court into consideration. What am I missing? OK. Let's let's let me answer in two parts, Your Honor. First of all, let's just say that we'll take Judge Van Dyke's premise that there was a good cause requirement because of the delay. Let's just take take that premise here. Clearly, there was good cause. And I'll get to that. But let me back up because I'm worried about the questions and where they're focusing on. You're saying there was Mr. Stone, right? Definitely good cause. But I think there's a fundamental threshold before we get to good cause. There was good cause. Save any of your time, by the way. But Judge Smith, is it all right? Because he's about ready to I want to know. That's fine. Go ahead. That's fine. I just want to ask him. I do want to hear it. I think you're saying there's good cause. But I'm going to put that to the side and you're going to tell me you're about to tell us something else that seemed pretty important. OK. Mr. Soto Melchior is the defendant. He's somebody who knows that he is facing at least the next decade of his life in jail. He comes to the court and he says, I don't trust my lawyer. I've scrimped together the money to save. I have enough money to pay for a lawyer. He hasn't shown me the discovery. I feel like he's working against me. He is helping the other side. I'm convinced that he's working against me. The lawyer, the public defender. I was a public defender for a long time. Gets up and says, judge, this relationship is awful. It's irreparably damaged. He feels that I've lied to him. He feels that I've betrayed him. He's accused me of helping co-defendants. And then the judge says, no. Defendant, defense lawyer, you agree. So that's not again. No, you don't get another lawyer. And what you're saying is, I think, accurate, except for the judge. He explored all that. He actually has a long call with the defendant. And he actually digs into precisely why the defendant feels that way. And sort of discovers, A, that the defendant's basis for feeling that way doesn't really seem to have any basis. The judge is really struggling with that. And it's hard for me to see how he abuses discretion or somehow. But secondly, when the defense counsel actually ends up talking to the judge. He basically says, let's get new counsel. Because then that will essentially delay the trial. And if that delays the trial, I think we'll get a plea deal here. But again, that brings us all the way back to the. So the real reason the defense counsel says we should do this is just so we can get a delay of trial. So we can get a plea deal. Respect for your honor, that is not what the counsel said. He's 28. He said it's not about the delay. Naturally, the government would like the plea. It says, we've been working on a plea agreement. Naturally, the government would like the plea to be entered, you know, in advance of the trial date. So that's what we've been working on. Frank, frankly, I don't believe this will ever go to trial, no matter who the lawyer is. So then he goes on and says, he basically tells the judge, I want to, I want to get, you know, why don't we just do this? And then I'll get a, we'll get it. It'll delay things and we'll get a plea agreement. And the judge says, no, you know, he says, no, because I don't want to delay things. I don't, I don't, I hear you counsel, but I'm just not sure that the record supports your theory. Why don't you, we'll give you a few minutes for a couple of minutes for rebuttal so you can respond more to our questions. I lost you there. I'm sorry. What I said was we'll give you a couple of minutes for rebuttal, but let's hear from Ms. Allsworth for the government's pleas. May it please the court. Good morning. Your honor is Melanie Allsworth appearing on behalf of the United States. I'd like to follow up on a couple of points that you raised judge Smith and judge Van Dyke about the delay and why there was actually the potential for a significant delay in this case. The first reason is because Mr. Sotomayor had never found an attorney that he could actually hire that ever appeared in court with him. So that suggests as judge O'Neill pointed out that counsel, if any counsel was identified that would come into this case, they would need ample time to prepare. And he would never expect in his years of experience that any attorney who subbed in even a month before trial or two weeks before trial would be Another reason we know that there was a serious threat of delay is because even if Mr. Sotomayor had brought an attorney in at the last minute, the court would have to delve into that particular attorney's scheduling conflicts, whether or not the attorney had seen the discovery, and a number of other issues that could determine how much time the attorney would need to actually prepare and try the case. And so speculating at this point that there would be no delay in the proceedings is just wrong. Quite frankly, judge O'Neill was well within his right to presume. Can I get you to address something that I think maybe we agree with you on that, on that point. So, okay. So the Brown factors, you know, the Brown's got three facts, you know, we've got this Brown case here. We're talking about four weeks of out from trial Brown. I think it was only two and a half weeks. So surprisingly it was even a short amount of time and yet the court ran a relief. Brown has three factors as I read it, that the court looked at that thought were made a difference. Are you familiar with that? The Brown, there's three factors. The first factor was that the court never talked about concern for its calendar. Maybe I'll just go through the factors. You can tell me why your case is different. So the first one is that the court never had concern, never expressed that it was concerned about its calendar as a basis for denying the motion. Do you think that's different in this case? I think the court did express concerns in this case about scheduling demands in the calendar and the upcoming months, the lack of available trial dates that would, that he had in the event council did substitute in. And may I back up for just a second and touch on Rivera, Corona and Brown, because I do know that Sotomayor court relies on these to justify his right to fire or to get rid of his court appointed attorney and bring in an identified retained attorney at this point. But actually the opposite posture was present in these two cases. And what we have is a defendant who's trying to fire his retained counsel for other very important reasons and actually have the attorney or the court appoint counsel to represent him. So the posture of the case doesn't rep doesn't help Mr. Soto Melchor. What Mr. Soto Melchor was presenting to the court was a situation where he wanted to get rid of his court appointed counsel, but he had no counsel to replace that court appointed attorney. And so had the court indulged him and granted his motion, he would have been left without counsel. And he never asked to proceed pro se. So the court was right here to require him to essentially show good cause and the reasons that he was trying. So I see that difference covering, and we don't have a lot of time to bring you back to the second Brown factor, if that's right, because this is the one that I think your, your colleague was, was really relying on, which is, he said, the court here was willing to continue the case. He said the court expressed willingness and he, he, and that in Brown was what part of what the court relied on was the willingness to continue the case. So how is this case different than Brown on that? I think it goes back to the difference in the posture, your honor, because what in Brown, the court should have considered whether or not he qualified for a court appointed attorney. So essentially in that case, the court could have found an attorney who he could have brought in, wanted to represent the defendant. And that's not what we have in this case. We have a defendant who says, I want to hire my lawyer a month out. He didn't have the funds to do so two weeks out. He alleged to have the funds to do so. That makes that goes. That's I think you're kind of answering the third prong. The third prong was that, you know, in Brown, there was a, there was another federal public defender right there ready to take over the case. And the court said, you know, he shouldn't let him take over. He couldn't take over immediately, but that, but here. The court was willing to continue the case. Although it's kind of weird because the court said he was willing to continue the case. The good cause could be shown, but then the government like a week ahead of time asked to continue the case and the court. So then both the parties wanted to continue the case. And then the court said, no, I'm not going to do it because you don't have good cause in this case. Is that right? It was two weeks out, your honor. I believe it was at the August 5th hearing, but yes, you're right. The government at some point when she realized that the defendant was going to proceed to trial, ask for a continuance and the court denied the request. Let me ask you this. My, my colleague has referred to Brown, which of course is what. Mr. Burstein, I believe also refers to, but my understanding is that in a case like this, where there's a request for change of counsel, the question is whether you chant you treat it as a request for a continuance. And we have a five part test under us versus Turner. Isn't it Turner that we should be applying in this case, as opposed to Brown. I apologize, your honor. I'm not familiar with the five part test in Turner. Okay. All right. I'm happy to submit a 28 day letter. If you would like me to do that. That'd be fine. And it's a eight 97 fed third, 10 84. And the five and the five part test is at 11 Oh two. And it's our court in 2018. Thank you, your honor. So bottom line, your, your answer to my colleague is basically that the case, the situation in Brown was different. And in this case that the focus of the court was really entirely on the calendar, basically, unless good cause could be shown the defendant was simply saying, I really don't trust my, my lawyer, but the reason he didn't trust him was because he didn't understand the way the guidelines work. And he thought that was going to be a problem. And the U S attorney said, you know, our plea, our plea discussions are not going to change. This is what you got. This is what the guidelines call for. So basically the court was looking at whether even having a new council would make any difference. Is that wrong? That's my understanding of the record, your honor. And I think that is supported in judge O'Neill's reasoning. And as well as statements of counsel, the court appointed attorney, Mr. Chavez at one point says that he thinks that the outcome would be the same, regardless of what attorney is representing him when they're still talking about the plea. So he says that, but it's kind of, so I don't know that we can really, how this plays. And maybe I'll be interested from hearing from Mr. Bernstein on how this plays, but his rationale for why the outcome would be the same was I was getting to earlier when I was talking to your colleague was that, that he said, this case isn't going to go to trial. And so why don't we just let this guy get a new attorney? And that will sort of give breathing space for the plea deal to happen. I'm, I'm paraphrasing, but, but obviously there, a plea deal didn't happen sort of contrary to what, and so that, how do we, how does that factor in it at all? The fact that if they had, if the judge had allowed this, maybe it wouldn't have went to trial and he would have gotten a more favorable plea deal. I know there's nothing in the case law about that, but that seems to have been his, his counsel's sort of theory as to why they should just appoint new counsel, continue the trial. Your Honor, I think what is evident from the record is that this case had been pending for over a year. He'd been through multiple status conferences and it wasn't until a month before trial date that he decided he wanted to file a motion for substitution. And at this point, the record is also evident that he had made multiple efforts to try to find a lawyer to substitute in and had no luck in doing so. And it would be speculation to think that even if judge O'Neill had, said, okay, I'll give you another status conference, that there would be attorney identified and hired and willing to sub in and try the case by the trial date again. Yeah. Because usually what helps encourage a plea deal to happen, I assume is in civil cases being on the, on the threshold of a trial, right? I mean, I wasn't a prosecutor or a criminal defendant, but attorney, but so in some ways that's a little bit of a counterintuitive argument. Give us more breathing space so we can get a plea when in reality. Yeah. So I'm just trying to figure out which way that cuts, but I think you're probably right. It's probably speculative, but I'll be interested to hear from your colleague on that. And may I just follow up on one particular point, because my colleague did bring up the point of trust and his Mr. Soto-Milkor's distrust in his attorney. And there was some discussion back and forth about the record that judge O'Neill made and ultimately tried to explain to Mr. Soto-Milkor that the system does work and you don't have to pay an attorney because he is appointed and he does represent you. And he was explaining the guidelines in their application and the possible sentencing exposure. And what the court has said, I believe in Daniels v. Woodford and even repeated it in Adelzo v. Gonzalez is that the defendant must have a legitimate basis for the distrust. And it's up to the court to inquire of the parties, what the basis is, and then make that determination. And in this case, judge O'Neill found that the basis for the distrust was not legitimate and not a reason to grant the motion. Thank you. I see my time is up. Thank you. Any additional questions by my colleagues? Very well. Mr. Burstein, we're going to give you a couple of minutes to respond. You have to turn on your mic. You're turned off there. Thank you, I'm going to respond to judge Van Dyke's question. Having had the privilege to serve as a federal public defender for, for a long time, this is what happens. Somebody gets, you get appointed. They don't get to choose their lawyer. They're facing a ton of time. They don't often want to hear that. It's a very hard thing to hear. And then if there's problems in the relationship, it breaks down. They no longer, they no longer trust you. You can't give them advice about the plea agreement. So federal public defenders always will go into court and explain. And most judges understand when you're saying this guy needs a new attorney. Under the Elliott case, the defense lawyers in the best position to make that call. And what they're saying is give him a new attorney, somebody he can kill, retain he'll trust that person more. And it will be in his best interest because he will then get a plea deal. And that is in real life, just the way it works. And that is almost always to a T what happens. Mr. Soto would have gotten the attorney he wanted. Yes, your honor. Yeah. What was, what I understand that argument, except he didn't have a lawyer yet. That's the, that to me, that's the problem here. So the, the, the trial court is between a rock and a hard place. And, uh, he, he, he knows that the defendant. Right. The council and he knows his schedule and he knows what effect in that district. Um, any delay is going to have, which is going to be to put the trial off. Uh, uh, uh, a good way. So I, I, um, I just wish you would respond to. How we can, why we should assume that he's going to have an attorney. That is ready to go and that he will trust more and that he can pay when the attorney isn't there yet. Fair, fair question, because as the court will recall, he, he, this didn't start a month before he had contacted multiple lawyers who then contacted Mr. Chavez and Mr. Chavez refused to return their calls. That's what he says. I didn't call them back because he was cooperating and I was worried about calling them back. So, so he said, I didn't call them back because. I felt it was so late and I didn't want to share that with them. In other words, because of the delay concern. Indeed. I thought that the council who left the message, both of them said that they were worried about the trial date, implying that they're not sure they could meet that timeframe. What he says is that I didn't call them back. Cause I, he was cooperating and I didn't want to share that information with anybody. That's what he, um, this is what I'll leave the court with this. You know, I, I can see where the court is heading on this. If you affirm here, your honors, and I'm not trying to be hyperbolic. It's telling the public defenders and the appointed council and the defendants. When you have, he says the attorney client relationship is irreparably damaged. So now Mr. Soto winds up with 151 months. Everybody's crying out and saying the interest of justice, give him a new lawyer. If you affirm here, because the Eastern district had a judicial emergency, it really it's a, it's an odd place to put the emphasis when the sixth amendment is so clear where the emphasis should be. This wasn't should have been an easy call, especially for a judge who would be glad to give you more time. If good cause is shown. And I'd submit to the court that when a lawyer comes in and says he accused me of taking action to help a co-defendant at the, at his expense, he feels I have intentionally thwarted his efforts to retain counsel. He is really upset at me. He doesn't trust me. He feels I have betrayed him. He does not trust me. He trusts me least of all the attorney client relationship is irreparably damaged. When you have a trusted, experienced federal public defender saying that. Counsel, I think we have your point and I think you characterize it adequately. That's a bit hyperbolic, but I think you have stated it as well as you can on, on this basis. So we thank both counsel for their argument in the case, the case of United States versus Soto Melchior is submitted. Thank you. Counsel. Thank you.
judges: Schroeder, M. Smith, Vandyke